

ENTERED
04/13/2016

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ATP OIL & GAS CORPORATION | § | CASE NO: 12-36187 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| HORNBECK OFFSHORE SERVICES, | § | |
| LLC | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-3221 |
| | § | |
| ATP OIL & GAS CORPORATION, *et al* | § | |
|     Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Bennu's motion for partial summary judgment is granted. Hornbeck's statutory liens do not constitute Senior Prior Liens. Accordingly, partial judgment will be granted over Bennu's counterclaim for declaratory judgment that it took the Telemark Properties free and clear of Hornbeck's alleged statutory liens. However, Bennu's summary judgment motion did not address its request for a permanent injunction. Bennu must file a brief statement by May 2, 2016, indicating whether it wishes to waive its request for a permanent injunction and obtain final judgment over the declaratory relief. If it does not wish to waive its request for injunctive relief, the Court will issue a scheduling order for trial.

### Background

*Hornbeck's Work for ATP*

On May 1, 2007, ATP Oil & Gas Corporation and Hornbeck Offshore Services LLC entered into a Time Charter Agreement under which Hornbeck agreed to charter its vessels to ATP. (ECF No. 49 at 2). Hornbeck then began providing goods, personnel, towing, and

transportation services to ATP on various offshore wells located on the Outer Continental Shelf ("OCS"). *Id.* These wells include three properties central to this dispute: (i) Atwater Valley, Block 63 ("AT 63"); (ii) Mississippi Canyon, Block 941 ("MC 941"); and (iii) Mississippi Canyon, Block 942 ("MC 942") (collectively, the "Telemark Properties"). (ECF No. 48-1 at 2; ECF No. 49 at 2). The parties agree that Hornbeck provided services generally to ATP from approximately November 27, 2009, until August 17, 2012, but dispute whether there was ever a period of ninety days or more where Hornbeck did not provide services specifically to the Telemark properties.

ATP filed a voluntary petition for chapter 11 relief on August 17, 2012. (Case No. 12-36187; ECF No. 1). It subsequently failed to pay Hornbeck for services provided on the OCS leases from February 22, 2012 to August 17, 2012, in the aggregate principal amount of $4,775,478.94. (ECF No. 49-3 at 3). Consequently, on September 14, 2012, Hornbeck recorded a lien pursuant to the Louisiana Oil Well Lien Act ("LOWLA") in Plaquemines Parish, Louisiana, as well as several counties in Mississippi. (ECF No. 49 at 3-4). Hornbeck filed Notices of Perfection, Continuation or Maintenance of Liens in the main bankruptcy case on October 12, 2012, and October 24, 2012. (Case No. 12-36187; ECF Nos. 604 and 705).

*Credit Suisse and Bank of New York Mortgages*

On April 23, 2010, ATP issued and sold $1.5 billion of senior second lien notes, pursuant to an indenture between ATP and Bank of New York Mellon ("BNY") as Trustee. *Harvey Gulf Int'l Marine, Inc. v. ATP Oil & Gas Corp. (In re ATP Oil & Gas Corp.)*, 537 B.R. 789, 791 (Bankr. S.D. Tex. 2015). In connection with the indenture, ATP executed a mortgage, security instrument, fixture filing, and assignment of production in favor of BNY, which was recorded in Plaquemines Parish on May 3, 2010. *Id.*

On June 18, 2010, ATP entered into a credit agreement with Credit Suisse as administrative and collateral agent which provided for initial term loans of $150 million. *Id.* In connection with the credit agreement, ATP executed a mortgage, security agreement, fixture filing, and assignment of production in certain interests to Credit Suisse which included the OCS leases. *Id.* This credit agreement was recorded in Plaquemines Parish on June 21, 2010. *Id.* Pursuant to an intercreditor agreement between ATP, BNY, and Credit Suisse, the liens and mortgages granted under the BNY Mortgage were subordinated to the liens and mortgages granted under the Credit Suisse Mortgage. *Id.*

*Senior Lien Cutoff Date*

On September 20, 2012, the Court issued a final order approving debtor-in-possession financing and granting certain liens. (ECF No. 48-1 at 2). The DIP order authorized the Debtor to obtain debtor-in-possession financing secured by liens on substantially all of the Debtor's assets, including the Telemark Properties. *Id.* at 3. It also established that the DIP liens were senior in priority to all other liens, except for those liens which met the definition of a "senior prior lien" as established in the DIP order. *Harvey Gulf*, 537 B.R. at 792. The DIP order established June 21, 2010, as the senior lien cutoff date.

On January 15, 2013, the Court issued a Lien Identification Order requiring all parties claiming a senior prior lien to file a Statement of Lien ("SOL") setting forth the earliest dates to which their respective liens related back with Kurtzman Carson Consultants. (Case No. 12-36187; ECF No. 1213). Hornbeck filed its SOL on February 14, 2013, claiming a relation back date of February 22, 2012, which would make its lien a Junior Telemark Lien. However, Hornbeck now claims a relation-back date of November 27, 2009, which would make its lien senior. (ECF No. 48-1 at 5).

On October 17, 2013, the Court issued a final sale order approving the sale of certain of the Debtor's assets, including the Debtor's interest in the Telemark Properties to Bennu Oil & Gas, LLC. (ECF No. 48-1 at 3). Pursuant to the final sale order, the sale of the Debtor's interest in the Telemark Properties was free and clear of all claims, liens, or other interests which could be asserted against the Debtor, save for assumed encumbrances, assumed obligations, and senior prior liens, as defined by the DIP order. *Id.*

*Procedural Posture*

Hornbeck commenced this adversary proceeding on August 26, 2013. (ECF No. 1). It subsequently filed an amended complaint on September 4, 2014. (ECF No. 36). In its amended complaint, Hornbeck seeks declaratory judgment that it holds valid and perfected statutory liens and privileges pursuant to LOWLA over the Telemark Properties. *Id.* at 15. Additionally, Hornbeck seeks declaratory judgment that its liens and privileges are "senior prior liens" as defined by the DIP order and that its liens and privileges should be paid in preference to the Credit Suisse Mortgage, the BNY Mortgage, and the DIP Liens, or, in the absence of payment, that Hornbeck be allowed to execute on its liens and privileges using all available legal remedies.

Bennu filed an answer on October 28, 2014, asserting a counterclaim for declaratory judgment that it took the Telemark Properties free and clear of any statutory lien asserted by Hornbeck. (ECF No. 47). On February 6, 2015, it filed a motion for partial summary judgment seeking declaratory judgment that Hornbeck's liens are not senior liens and denying all relief sought by Hornbeck against the Telemark Properties. (ECF No. 48). The parties are in agreement that if Hornbeck's LOWLA lien relates back to 2009, when it commenced services, then Bennu's motion must be denied. Conversely, if it *does not* relate back to 2009, the motion must be granted.

## Jurisdiction

At a minimum, this Court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and § 157.  Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11."  *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987).  The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.*  Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy."  *Bass v. Denney (In re Bass),* 171 F.3d 1016, 1022 (5th Cir.1999) (citing *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 569 (5th Cir.1995); *In re Wood,* 825 F.2d at 93).

Subject matter jurisdiction is determined at the time the complaint is filed.  *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994) (citing *Rosa v. Resolution Trust Co.,* 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied,* 502 U.S. 981 (1991)).  As of the date of the petition—August 26, 2013, the Debtor had filed an Asset Purchase Agreement which proposed selling substantially all of the Debtor's assets to an undisclosed buyer (ultimately Bennu) and establishing a $55,000,000.00 Senior Lien Escrow.  (Case No. 12-36187; ECF No. 2074-1). Senior Prior Liens would be first paid out of the Senior Lien Escrow and the Debtor's estate retained a contingent interest in leftover funds from the Escrow.  (Case No. 12-36187; ECF No. 2706).

At a minimum, this Court possesses 'related to' jurisdiction because resolution of the case may affect ATP's bankruptcy estate.   The Fifth Circuit has construed "related to"

jurisdiction broadly. *See TXNB Internal Case v. GPR Holdings L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 298 (5th Cir.2007).   An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987) (citing *Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984, 994 (3rd Cir.1984)).   The adjudication of claims in this lawsuit could reduce the Debtor's contingent interest in the Senior Lien Escrow.   The depletion of the Senior Lien Escrow could also cause other lien claimants to assert claims against the Debtor's Estate.   At the time this adversary proceeding commenced, the Senior Lien Escrow had not been exhausted.   Furthermore, "determinations of the validity, extent, or priority of liens" are considered core matters and 'arise in' a case under Title 11.   28 U.S.C. § 157(b)(2)(k); *Bennu Oil & Gas, LLC v. Bluewater Indus., L.P. (In re ATP Oil & Gas Corp.)*, 2015 WL 4381068 at *1-2 (Bankr. S.D. Tex. July 15, 2015).   The Court possesses subject matter jurisdiction over this adversary proceeding.

## Constitutional Authority

Although subject matter jurisdiction is proper in this Court, questions regarding an Article I judge's constitutional authority must be addressed.   Under *Stern v. Marshall*, the Supreme Court held that whether a bankruptcy court can enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.   131 S.Ct. 2594, 2618 (2011).   This adversary proceeding involves state law claims between two non-debtor parties and would not necessarily be resolved in the claims allowance process.   Furthermore, Hornbeck has not consented to the entry of a final judgment.   *See Wellness Int'l Network, Ltd. v. Sharif,* 135 S.Ct. 1932 (2015) ("We hold that

Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge").

Although it is unlikely this Court possesses the necessary constitutional authority to enter final judgment, a court may still issue interlocutory orders in proceedings where the court lacks authority to issue a final judgment. *Trevino v. HSBC Mortg. Serv. (In re Trevino),* 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015). An order resolving fewer than all of the claims presented in a complaint is interlocutory. *Id.* at 126. As the Court is not granting summary judgment over all claims presented in this lawsuit, the order accompanying this opinion is interlocutory.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

LOWLA creates a statutory service privilege for oil service providers. *Harvey Gulf Int'l Marine, Inc. v. ATP Oil & Gas Corp. (In re ATP Oil & Gas Corp.)*, 537 B.R. 789, 794 (Bankr. S.D. Tex. 2015). Pursuant to § 9:4864(A) of the statute, a privilege is established and effective as to third parties when:

(1) The claimant, who is a contractor, laborer, or employee begins rendering services at the well site.
(2) Movables sold by the claimant to an operator or contractor are delivered to the well site.
(3) The claimant begins transporting movables to, or persons to or from, the well site.
(4) Property leased by the claimant to an operator or contractor is placed on the well site for use in operations.

La. Rev. Stat. § 9:4864(A). The parties do not dispute that Hornbeck began services on the Telemark properties on November 27, 2009. Hornbeck also properly recorded its lien on

September 14, 2012, well within the 180-day look back period.[2]   However, LOWLA also provides that if the privilege holder does not provide services giving rise to a privilege for a period greater than 90 days, separate privileges are established for a period before and after the gap in services.  La. Rev. Stat. § 9:4864(C).  Because Hornbeck recorded its lien on September 14, 2012, in order for it to establish a privilege relating back to November 27, 2009, it would have to have continuously provided services from that date until March 18, 2012, without a gap of more than 90 consecutive days.

In addition, LOWLA requires that the 90-day continuity for the relation-back period must be on the "same operating interest."  La. Rev. Stat. § 9:4864(C).  Operating interest is defined under LOWLA as "a mineral *lease or sublease*, or an interest in a lease or sublease that gives the lessee, either singly or in association with others, the right to conduct the operations giving rise to the claimant's privilege."  *Id.* § 9:4861(5).  The Telemark Properties are made up of three separate leases: (1) OCS Lease No. G-16661; (2) OCS Lease No. G-24130; and (3) OCS Lease No. G-13198.  (ECF No. 49 at 2).  Not only must Hornbeck show that it performed services without a 90-day gap, it must show that it provided services on each individual lease without a 90-day gap for relation back to apply.

Bennu has alleged three such 90-day gaps.  Specifically, it has provided an invoice summary showing gaps of (i) 132 days between February 22, 2011 and July 4, 2011, (ii) 160 days between July 25, 2011, and January 1, 2012, and (iii) 99 days between January 3, 2012, and April 11, 2012.  (ECF No. 48-8).  In response, Hornbeck has provided three exhibits containing invoices which it alleges show that, in fact, Hornbeck was providing services to the Telemark Properties during the gap periods.

---

[2] A financing statement noticing a privilege must be filed within one hundred-eighty days of the cessation of activity which gave rise to the privilege.  La. Rev. Stat. § 9:4865.

The first exhibit shows that the HOS Brimstone performed work for ATP between May 18, 2011, and August 2, 2011.  (ECF No. 49-15 at 4-5).  If the Brimstone performed work on the Telemark Properties, the first gap would be less than 90 days.  However, the invoice provided by Hornbeck does not indicate which leases the Brimstone worked on.  *Id.*  Bennu relies upon an invoice from Hornbeck for the Brimstone charter for the period from June 1, 2011, to June 18, 2011.  (ECF No. 51-2 at 2).  The invoice, as well as attached the daily master's logs, clearly indicate that during this 18-day period the Brimstone performed work on the Ocean Victory rig on the Mississippi Canyon 711 lease.  *Id.* at 3.  MC 711 is not a Telemark Property.  Hornbeck has not provided any documentary evidence showing that its vessels performed work on the Telemark Properties between February 22, 2011 and July 4, 2011.

The second exhibit shows that Hornbeck performed work on the Telemark Properties up to August 3, 2011—which Bennu does not dispute—but that would only reduce the 160-day gap by 10 days.  (ECF No. 49-16 at 1-3).  More importantly, it also references an invoice entitled "Fugro Chance Invoice" dated October 5, 2011.  (ECF No. 49-17 at 5-12).  However, the actual text of the Fugro Chance invoice contains a heading stating "**Professional Services from July 23, 2011 to July 25, 2011**."  (ECF No. 49-17 at 13) (emphasis in original).  Although the Fugro Chance invoice unquestionably relates to the Telemark Properties (specifically MC 941), there is no evidence that any work was done during the period from August 3, 2011 to January 1, 2012.

The third exhibit is an invoice for the HOS Achiever for its work one of the Telemark Properties, MC 941, starting on April 11, 2012.  (ECF No. 49-19).  Attached to the invoice is the daily master's log created by the ship's captain which indicates that some of the crew boarded the vessel as early as March 14, 2012.  Bennu contends that because the cover page of the invoice indicates a start date of April 11, 2012, Hornbeck has not raised an issue of material fact

with regards to the alleged 99-day gap between January 3 and April 11.  However, the daily master's log states that the HOS Achiever was "on charter with ATP" when several of the crew boarded the ship in March.  (ECF No. 49-19 at 11).  Hornbeck has raised a fact issue as to whether the HOS Hornbeck performed work on MC 941 as of March 14, 2012.

In addition to the invoices, Hornbeck has also offered the affidavit of Boyd Kitchen, the Director of Financial Reporting for Hornbeck, who stated that "there was never a period of ninety (90) days or more between services provided by Hornbeck to ATP on the Telemark Properties."  (ECF No. 49-3 at 3).  Kitchen did not base this statement off his personal knowledge of where Hornbeck's ships performed work, but rather through his personal familiarity with the books and records of Hornbeck.  *Id.* at 2.  He also based his testimony on the invoices referenced above.  *Id.* at 3.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).  "A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment *where the evidence in the record is to the contrary*."  *Jones v. Hous. Indep. Sch. Dist. Bd. of Trustees*, 986 F. Supp.2d 812, 819 (S.D. Tex. 2013) (emphasis added).  Kitchen's affidavit is based solely on his review of Hornbeck's books and records, and these books and records do not support the claim that there were no 90-day gaps between February of 2011 and April of 2012.  Accordingly, this affidavit is insufficient to create a genuine issue of material fact.

The summary record indicates that there were two gaps of at least 90 days in Hornbeck's work on the Telemark Properties between approximately February 22, 2011 and July 4, 2011 and July 25, 2011, and January 1, 2012.  In addition, there was an additional gap of more than 90

days for two of the Telemark Properties between January 3, 2012, and April 11, 2012.  Although Hornbeck raised a fact issue with regards to work performed on MC 941 in March of 2012, this is ultimately immaterial due to the two previous gap periods.  Bennu has established that Hornbeck did not continuously perform work on the Telemark Properties during the relevant time period.  As a result, Hornbeck's privilege pursuant to LOWLA does not relate back to November 27, 2009, and is not a senior prior lien.  Accordingly, Bennu's motion for partial summary judgment is granted.

**Conclusion**

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **<u>APRIL 11, 2016.</u>**

_____<br>
MARVIN ISGUR<br>
UNITED STATES BANKRUPTCY JUDGE